(No. 93699.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RONALD J. LAMPITOK, Appellee.

*Opinion filed September 18, 2003.*

James E. Ryan and Lisa Madigan, Attorneys General, of Springfield, and C. Steve Ferguson, State's Attorney, of Charleston (William L. Browers, Lisa A. Hoffman and Domenica A. Osterberger, Assistant Attorneys General, of Chicago, Norbert J. Goetten and Robert J. Biderman, of the Office of the State's Attorneys Appellate Prosecutor, of Springfield, and John E. Longwell, Assistant State's Attorney, of counsel), for the People.

Michael K. Radloff, of Ryan, Bennett, Radloff & O'Brien, of Mattoon, for appellee.

JUSTICE GARMAN delivered the opinion of the court:

Defendant, Ronald Lampitok, was arrested and charged with five offenses based on evidence found in his motel room by three probation officers. The officers went to the motel to verify whether defendant's fiancée, Kitty Bircher, had violated her probation order. Upon their arrival, defendant informed the officers that Bircher was not present but that she had been staying there. Despite defendant's objection, the officers conducted a warrantless search of the room pursuant to a search condition of Bircher's probation order and seized several items as evidence. Defendant was later arrested and charged based on this evidence.

After making several factual findings, the circuit court of Coles County allowed defendant's pretrial motion to quash arrest and suppress evidence. A divided appellate court affirmed. No. 4—01—0085 (unpublished order under Supreme Court Rule 23). We granted the State's petition for leave to appeal (177 Ill. 2d Rs. 315, 612(b)) to address whether a search of defendant's motel room in which a probationer subject to a search condition was staying was reasonable under the fourth amendment.

## BACKGROUND

Because we are reviewing the circuit court's ruling on a pretrial motion, the record before us is limited. In July 2000, defendant and Bircher were engaged to be married and were living with Bircher's cousin, Bobby Craig, Bircher's daughter, and two other roommates in an apartment on Madison Street in Charleston. Bircher reported this apartment as her place of residence as required by her probation order. Defendant and Bircher had been living in this apartment for approximately one month when Craig asked them to leave because the landlord was coming to inspect the apartment. Craig was listed on the lease, and the lease prohibited him from

having roommates. At the motion hearing, Bircher testified that "he [Craig] asked us to leave for a couple of days so they could do that [the inspection] and then we were allowed to go back." Bircher also testified that she had clothes at this apartment, and her mailing address was in Charleston. She did not notify her probation officer about being at the motel because she "had not moved." She acknowledged that under her probation order, which she had signed, her residence could be searched at any time.

On July 12, 2000, the first night away from the Charleston apartment, Bircher stayed with her cousin, Lori, in Mattoon, and defendant stayed at the U.S. Grant Motel in Mattoon. Defendant registered for the motel room while Bircher stayed in the car; defendant paid for the room for the nights of July 12 and 13. Bircher did not have a key to the room. Bircher and her daughter stayed in the room with defendant the night of July 13, and Bircher brought clothing with her. Bircher obtained a Salvation Army voucher to pay for the motel room for the night of July 14. Bircher testified that they intended to return to the Charleston apartment on the morning of July 15.

Probation Officer Steve Kelly also testified at the hearing. Bircher's probation officer, Mitch Goodwin, had attempted a routine home visit at Bircher's Charleston apartment on the morning of July 14. Kelly testified that Goodwin told him that "he made contact with two relatives and they stated that she no longer lived there, she was staying with Mr. Lampitok at the U.S. Grant Motel in Mattoon." Kelly, Goodwin, and fellow probation officer Vicki Starwalt discussed the situation. The three officers decided to go to the motel primarily to verify whether Bircher violated her probation order by changing residences without prior notification and also to verify whether Bircher was in further violation by residing in

the presence of weapons or drugs. Kelly had previous personal encounters with defendant during which he suspected that defendant had been under the influence of drugs. During these encounters, defendant acknowledged that Bircher was on probation. Kelly admitted that at that time they had no information that defendant was involved in any illegal activity.

The officers arrived at the motel around 1:15 p.m. Goodwin and Kelly stopped at the motel office to ask what room Bircher was staying in, and they were directed to room 14. Goodwin knocked repeatedly on the door; the officers could hear movement in the room. Eventually, defendant answered the door. Goodwin asked whether Bircher was there, and defendant responded that she was not. Kelly also testified that "Officer Goodwin asked him if Kitty [Bircher] was staying there with him and he said yes." After additional conversation not disclosed in the record, Kelly informed defendant that they were going to enter the room. Defendant refused and attempted to close the door. Because Kelly was in the doorway with his foot in the doorjamb, defendant was unable to close the door. The officers entered, and nothing illegal was in plain view. Bircher was in fact absent, but she had left her two-year-old daughter in defendant's care.

The officers did not have a warrant to search the motel room. As the officers began to search the room, defendant fled. Starwalt attended to the young girl. Kelly discovered a soft makeup bag containing a pistol and ammunition between the mattress and box springs of the bed. He also found a sword and a knife on the floor underneath this portion of the bed. Goodwin discovered a syringe and a plastic baggy with a white powder, later determined to be a controlled substance. Kelly speculated that Goodwin discovered this evidence in a duffel bag in the closet, but he was not certain because he was busy searching at the time.

Certain conditions of Bircher's probation order are relevant to this case:

"1. That the Defendant shall not violate any criminal statute of any jurisdiction.

* * *

6. That the Defendant shall keep her Probation Officer advised of her place of residence and employment at all times, advising the Probation Officer prior to any change of residence or employment.

* * *

8. That the Defendant shall not possess a firearm or other dangerous weapon.

* * *

11. That the Defendant shall submit to a search of her person, residence, or automobile at any time as directed by her Probation Officer to verify compliance with the conditions of this Probation Order."

Bircher's two-year probation period began April 6, 1999, so she clearly was on probation at the time of the July 14, 2000, search.

On the basis of the evidence seized from the motel room, defendant was arrested and charged with unlawful possession of a weapon by a felon (720 ILCS 5/24—1.1 (West 1998)), unlawful possession of firearm ammunition by a felon (720 ILCS 5/24—1.1 (West 1998)), unlawful possession of a hypodermic syringe (720 ILCS 635/1 (West 1998)), unlawful possession of a controlled substance (720 ILCS 570/402(d) (West 1998)), and armed violence (720 ILCS 5/33A—2 (West 1998)).

The circuit court made numerous findings when allowing defendant's motion to quash arrest and suppress evidence. The court stated that "[a] warrantless search was conducted without defendant's consent. The Probationer, Kitty Bircher, was not present. The defendant has standing to object to same. He was the registered tenant of the room searched with an expectation of privacy."

The court found that paragraph 11 of Bircher's probation order was not authorized by section 5—6—3 of the Unified Code of Corrections (Code) (730 ILCS 5/5—6—3 (West 2000)). The court further condemned the search given the lack of applicable "regulations, guidelines, standards or procedures" comparable to those present in *Griffin v. Wisconsin*, 483 U.S. 868, 97 L. Ed. 2d 709, 107 S. Ct. 3164 (1987), and the lack of "reasonable grounds to believe that contraband was present or that the Probationer or the defendant had committed a criminal offense." The court also found that the motel room was not Bircher's residence.

A divided appellate court affirmed. No. 4—01—0085 (unpublished order under Supreme Court Rule 23). The appellate court agreed with the circuit court that defendant was the registered tenant of the room and that he had an expectation of privacy in the room. The order did not review the finding that the room was not Bircher's residence because it did not consider that fact to be dispositive in its analysis. The order noted that although section 5—6—3(b) of the Code does not list submission to a probation search as a possible condition, it "may be" permissible under the section's general authorization of "other reasonable conditions relating to the nature of the offense or the rehabilitation of the defendant." 730 ILCS 5/5—6—3(b) (West 1998). However, Bircher's probation order required her to "submit to a search *** as directed by her Probation Officer." Because she was not present at the time of the search, she could not be directed by her probation officer to submit to the search. Thus, the search was not authorized by the probation order. In addition, defendant was not a probationer, the officers had no information that defendant was involved in criminal activity, and he did not consent to the search, making the search constitutionally unreasonable as to him.

The special concurrence noted that the relevant issue was whether the officers reasonably believed that the motel room was Bircher's residence rather than whether it was her actual residence. The record contained sufficient facts to find that the officers reasonably believed the room was Bircher's residence so that she was in violation of her requirement to notify them of a change in residence. The concurrence disagreed with the majority order's finding that defendant did not have a reduced expectation of privacy because he cohabited with a probationer. However, the concurrence agreed that the search did not comply with the probation order's specification that it be "directed by her Probation Officer," which required either Bircher's presence or notice of the search. Because the search was also warrantless, the evidence was properly suppressed on this basis.

The dissent agreed with the special concurrence that the officers had a reasonable belief that the motel room was Bircher's residence and that defendant had a reduced expectation of privacy. However, the dissent did not agree that the probation order required Bircher's presence at the search because the probationer could always evade probation conditions by not answering the door or having another falsely claim she was gone.

The complexity of this issue and the inclusion of three separate appellate opinions in this order create an unusual disposition. The concurring and dissenting justices agree on the resolution of some issues so that they become the holding of the appellate court even though they are not found in the principal order. See *Marks v. United States*, 430 U.S. 188, 194 n.8, 51 L. Ed. 2d 260, 266 n.7, 97 S. Ct. 990, 994 n.8 (1977). Specifically, these two justices agree that the officers had a reasonable belief that the motel room was Bircher's residence and that defendant had a reduced expectation of privacy. Two justices found that the language of Birch-

er's probation order required her to be present during a search so that she could initially submit to that search directed by her probation officer, the basis on which the court affirmed suppression of the evidence. Thus, although fourth amendment principles are discussed, the appellate court's affirmance of the suppression of the evidence is based on noncompliance with the terms of the probation order.

In reviewing this appellate decision, we examine whether the search was unconstitutional so that the evidence it uncovered was properly suppressed. This fourth amendment analysis has several components: (A) a discussion of relevant case law, demonstrating that the search must be reasonable at its inception and in its scope under the totality of the circumstances; (B) a determination of what level of individualized suspicion is required for the probation search to be justified at its inception; (C) an evaluation of what level of individualized suspicion the officers had that Bircher was in violation of her probation order; (D) an examination of whether the scope of the search exceeded the initial justification for the search; and (E) an analysis of whether Bircher's acceptance of the search condition in her probation order constituted prospective consent to all searches, waiving fourth amendment protection.

ANALYSIS

The burden of proof is on the defendant at a hearing on a motion to suppress evidence. 725 ILCS 5/114—12(b) (West 2002); *People v. Gipson*, 203 Ill. 2d 298, 306 (2003). If the defendant makes a *prima facie* case that the evidence was obtained through an illegal search, then the State can counter with its own evidence. *Gipson*, 203 Ill. 2d at 306-07. At the hearing, defendant contended that evidence was seized pursuant to an unconstitutional search; he offered testimony to support that the search of his motel room was nonconsensual, warrantless, and

suspicionless and that the probationer, Bircher, was not present during the search. The State responded that this search was proper because the search was conducted pursuant to the search condition in Bircher's probation order and was conducted in compliance with fourth amendment principles.

Generally, a circuit court's ruling on a motion to suppress evidence presents a mixed question of law and fact. *People v. Thomas*, 198 Ill. 2d 103, 108 (2001). The reviewing court upholds the factual findings and witness credibility determinations of the circuit court unless they are against the manifest weight of the evidence. *People v. Gherna*, 203 Ill. 2d 165, 175 (2003). If the reviewing court accepts the factual findings, it reviews *de novo* whether suppression is appropriate under those facts. *Gherna*, 203 Ill. 2d at 175. In the present case, our conclusions do not depend upon factual findings by the circuit court that are disputed by the parties, so we conduct *de novo* review.

A. Relevant Precedent

In his motion to quash arrest and suppress evidence, defendant challenged the search on both federal and state constitutional grounds. The fourth amendment of the United States Constitution applies to the states through the due process clause of the fourteenth amendment because "the right to be free from arbitrary government intrusion is basic to a free society and implicit in the concept of ordered liberty." *People v. James*, 163 Ill. 2d 302, 311 (1994), citing *Stefanelli v. Minard*, 342 U.S. 117, 119, 96 L. Ed. 138, 141-42, 72 S. Ct. 118, 119-20 (1951). In addition, this court has acknowledged that the fourth amendment provides the same level of protection as the search and seizure provision in article I, section 6, of our Illinois Constitution (Ill. Const. 1970, art. I, § 6). *People v. Tisler*, 103 Ill. 2d 226, 241 (1984). The narrow exception we have carved to the lockstep doctrine in the fourth

amendment context is not relevant to this case. *People v. Krueger*, 175 Ill. 2d 60, 75-76 (1996). Defendant provides no specific argument that the Illinois Constitution should provide broader protection than that of the fourth amendment in this situation. Thus, we follow United States Supreme Court decisions on fourth amendment issues in this case. *Krueger*, 175 Ill. 2d at 74.

Pursuant to the exclusionary rule, courts are precluded from admitting evidence that is gathered by government officers in violation of the fourth amendment. *Mapp v. Ohio*, 367 U.S. 643, 649, 6 L. Ed. 2d 1081, 1086, 81 S. Ct. 1684, 1688 (1961); see *People v. Brocamp*, 307 Ill. 448, 453-56 (1923). The rule is not designed to redress the invasion of privacy experienced by the search victim. *United States v. Calandra*, 414 U.S. 338, 347, 38 L. Ed. 2d 561, 571, 94 S. Ct. 613, 619 (1974). Instead, the exclusionary rule is a judicially created remedy that protects fourth amendment rights by deterring future unlawful police conduct. *Calandra*, 414 U.S. at 347, 38 L. Ed. 2d at 571, 94 S. Ct. at 619-20. The exclusionary rule may be invoked by the victim of the unlawful search when the State seeks to introduce the evidence uncovered by the search in a criminal prosecution. *Calandra*, 414 U.S. at 348, 38 L. Ed. 2d at 571-72, 94 S. Ct. at 620.

The fourth amendment of the United States Constitution requires searches and seizures to be reasonable, "measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39, 136 L. Ed. 2d 347, 354, 117 S. Ct. 417, 421 (1996). There are two steps in the analysis of whether a search is reasonable under the fourth amendment: "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 19-20, 20 L. Ed. 2d 889, 905, 88 S. Ct. 1868, 1879 (1968).

A defendant can claim fourth amendment protection if he or she has a "legitimate expectation of privacy" in the area or item searched. *Rakas v. Illinois*, 439 U.S. 128, 143, 58 L. Ed. 2d 387, 401, 99 S. Ct. 421, 430 (1978). A legitimate expectation of privacy must be " 'one that society is prepared to recognize as "reasonable" ' " rather than a mere subjective expectation. *Rakas*, 439 U.S. at 143 n.12, 58 L. Ed. 2d at 401 n.12, 99 S. Ct. at 430 n.12, quoting *Katz v. United States*, 389 U.S. 347, 361, 19 L. Ed. 2d 576, 588, 88 S. Ct. 507, 516 (1967) (Harlan, J., concurring). We have held that hotel or motel guests generally are accorded the same fourth amendment protection in their rooms as residents in their private homes. *People v. Eichelberger*, 91 Ill. 2d 359, 364-65 (1982); accord *Stoner v. California*, 376 U.S. 483, 490, 11 L. Ed. 2d 856, 861, 84 S. Ct. 889, 893 (1964). A person's right to retreat into his or her home without unreasonable governmental interference is a core fourth amendment principle. *Kyllo v. United States*, 533 U.S. 27, 31, 150 L. Ed. 2d 94, 100, 121 S. Ct. 2038, 2041-42 (2001), quoting *Silverman v. United States*, 365 U.S. 505, 511, 5 L. Ed. 2d 734, 739, 81 S. Ct. 679, 683 (1961); *People v. White*, 117 Ill. 2d 194, 210 (1987).

A person's expectation of privacy is affected by living with another person, a point which typically arises in third-party consent cases. The law recognizes that a cohabitant possesses common authority over the premises such that he or she can consent to a search of the common area, meaning property of which there is "joint access or control for most purposes." *United States v. Matlock*, 415 U.S. 164, 171 n.7, 39 L. Ed. 2d 242, 250 n.7, 94 S. Ct. 988, 993 n.7 (1974) ("it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched"); see *People v. Stacey*,

58 Ill. 2d 83, 89 (1974) (adopting *Matlock*). Nonetheless, because cohabitation does not completely remove a person's expectation of privacy, defendant can claim fourth amendment protection in the motel room.

Law enforcement officers are not entitled to enter, much less search, a person's home without a warrant absent exigent circumstances. *Payton v. New York*, 445 U.S. 573, 590, 63 L. Ed. 2d 639, 653, 100 S. Ct. 1371, 1382 (1980). Under the fourth amendment, entry into a motel room is the equivalent of entering into a defendant's home. *Stoner*, 376 U.S. at 490, 11 L. Ed. 2d at 861, 84 S. Ct. at 893; *Eichelberger*, 91 Ill. 2d at 364-65. The State does not assert that exigent circumstances existed in this case.

Further analysis is needed to determine whether the officers were entitled to search the motel room for evidence that Bircher had violated her probation order. In the usual case, the fourth amendment requires the government to obtain a warrant supported by probable cause before conducting a search. *Illinois v. McArthur*, 531 U.S. 326, 330, 148 L. Ed. 2d 838, 847, 121 S. Ct. 946, 949 (2001); *People v. Adams*, 149 Ill. 2d 331, 341 (1992). The Court has noted, however, that "there are exceptions to the warrant requirement. When faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual circumstances may render a warrantless search or seizure reasonable." *McArthur*, 531 U.S. at 330, 148 L. Ed. 2d at 847, 121 S. Ct. at 949; see *Adams*, 149 Ill. 2d at 341-42.

The Supreme Court analyzed a warrantless probation search in *Griffin v. Wisconsin*. In that case, probation officers conducted a warrantless search of the home of probationer Griffin and found a gun that led to his conviction for a weapons offense. *Griffin*, 483 U.S. at 870, 97 L. Ed. 2d at 715, 107 S. Ct. at 3166. Although the

Court found the search did not violate fourth amendment principles, it expressly declined to hold that any search of a probationer's home by probation officers is valid if the officers have reasonable grounds for the search. *Griffin*, 483 U.S. at 872, 97 L. Ed. 2d at 717, 107 S. Ct. at 3168. The Court recognized that a state-run probation system presents "special needs" beyond typical law enforcement that "may" justify an exception to the usual warrant and probable-cause requirements. *Griffin*, 483 U.S. at 873-74, 97 L. Ed. 2d at 717, 107 S. Ct. at 3168. In addition, "[t]o a greater or lesser degree, it is always true of probationers *** that they do not enjoy 'the absolute liberty to which every citizen is entitled, but only ... conditional liberty properly dependent on observance of special [probation] restrictions.' " *Griffin*, 483 U.S. at 874, 97 L. Ed. 2d at 718, 107 S. Ct. at 3169, quoting *Morrissey v. Brewer*, 408 U.S. 471, 480, 33 L. Ed. 2d 484, 494, 92 S. Ct. 2593, 2600 (1972). Probation restrictions promote the purposes of probation: rehabilitation of probationers and protection of the public. *Griffin*, 483 U.S. at 875, 97 L. Ed. 2d at 718, 107 S. Ct. at 3169. Supervision during probation, ensuring that such restrictions are followed, constitutes the "special need" of the State, which justifies a greater degree of infringement on privacy than is generally constitutional with regard to the general public. *Griffin*, 483 U.S. at 875, 97 L. Ed. 2d at 718, 107 S. Ct. at 3169.

The Court then evaluated whether this "special need" of the probation system justified the particular search. *Griffin*, 483 U.S. at 875, 97 L. Ed. 2d at 718, 107 S. Ct. at 3169. Under Wisconsin law, probationers are placed in the legal custody of the State Department of Health and Social Services, and courts can subject them to conditions pursuant to certain rules and regulations. *Griffin*, 483 U.S. at 870, 97 L. Ed. 2d at 715, 107 S. Ct. at 3167. Under these regulations, a probation officer can

conduct a warrantless search of a probationer's home upon "reasonable grounds" to believe the probationer possesses any item that violates his or her probation order. *Griffin*, 483 U.S. at 870-71, 97 L. Ed. 2d at 715, 107 S. Ct. at 3167, citing Wis. Adm. Code §§ 328.21(4), 328.16(1) (1981). The Court recognized that it was bound by the Wisconsin Supreme Court's interpretation of these state regulations; the Wisconsin high court had found that a police officer's tip that Griffin "had" or "may have had" an illegal weapon in his home satisfied the "reasonable grounds" standard set by Wisconsin law. *Griffin*, 483 U.S. at 875, 97 L. Ed. 2d at 718, 107 S. Ct. at 3169.

The Court found that the "special needs" of Wisconsin's probation system justify searches upon "reasonable grounds" as defined by the Wisconsin Supreme Court, rather than upon a warrant supported by probable cause. *Griffin*, 483 U.S. at 875-76, 97 L. Ed. 2d at 718-19, 107 S. Ct. at 3169-70. Requiring a warrant would interfere with the probation system in two ways: a magistrate rather than the more-involved probation officer would decide the level of supervision, and the delay of obtaining a warrant would hamper response to evidence of misconduct. *Griffin*, 483 U.S. at 876, 97 L. Ed. 2d at 719, 107 S. Ct. at 3170. Similarly, requiring probable cause to search could allow a probationer to evade probation conditions because sufficiently concealed illegal conduct could go undetected. *Griffin*, 483 U.S. at 878, 97 L. Ed. 2d at 720, 107 S. Ct. at 3171. In summary, the Court explained:

> "In such circumstances it is both unrealistic and destructive of the whole object of the continuing probation relationship to insist upon the same degree of demonstrable reliability of particular items of supporting data, and upon the same degree of certainty of violation, as is required in other contexts. In some cases—especially those involving drugs or illegal weapons—the probation agency must be able to act based upon a lesser degree of certainty than the

Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society. The agency, moreover, must be able to proceed on the basis of its entire experience with the probationer, and to assess probabilities in the light of its knowledge of his life, character, and circumstances." *Griffin*, 483 U.S. at 879, 97 L. Ed. 2d at 721, 107 S. Ct. at 3171.

The Court again emphasized the narrowness of its holding by specifying that this probation search was reasonable under the fourth amendment because it was conducted in compliance with a valid regulation permitting warrantless probation searches upon "reasonable grounds," a standard which the Wisconsin Supreme Court found had been met. *Griffin*, 483 U.S. at 880 & n.8, 97 L. Ed. 2d at 721-22 & n.8, 107 S. Ct. at 3172 & n.8.

Probation searches in Illinois are not subject to regulations comparable to those in Wisconsin that were discussed in *Griffin. People v. Flagg*, 217 Ill. App. 3d 655, 657 (1991). Bircher's probation search condition itself does not mention "reasonable grounds" or any other standard of suspicion needed to justify a search. Section 5—6—3 of the Code addresses conditions of probation. Subsection (a) specifies eight required probation conditions; subsection (b) provides numerous examples of conditions that the court in its discretion may require, "in addition to other reasonable conditions relating to the nature of the offense or the rehabilitation of the defendant as determined for each defendant." 730 ILCS 5/5—6—3(a), (b) (West 1998). Neither subsection lists a search condition, so this provision does not impose a particular standard of suspicion to support a search. We decline to follow the State's suggestion that the requirement that other discretionary probation conditions be "reasonable" itself imposes a "reasonable grounds" requirement specifically upon probation searches. Such a detailed interpretation is not plainly evident within the

single word "reasonable" used in such a general, catch-all phrase. See *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997). In addition, the Illinois Administrative Code contains no regulation of probation searches. The Court in *Griffin* explicitly conditioned its finding that the probation search was reasonable on the fact that it was conducted pursuant to a state regulation requiring officers to have "reasonable grounds" to justify the search. *Griffin*, 483 U.S. at 880 & n.8, 97 L. Ed. 2d at 721-22 & n.8, 107 S. Ct. at 3172 & n.8. Thus, *Griffin* alone does not confirm the constitutionality of the search in the present case.

The Supreme Court again reviewed a warrantless search of a probationer's home in *United States v. Knights*, 534 U.S. 112, 151 L. Ed. 2d 497, 122 S. Ct. 587 (2001). Probationer Knights was subject to a probation condition in California requiring him to " '[s]ubmit his ... person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer.' " *Knights*, 534 U.S. at 114, 151 L. Ed. 2d at 502, 122 S. Ct. at 589. As part of a vandalism investigation, Detective Hancock suspected the involvement of Knights. *Knights*, 534 U.S. at 114-15, 151 L. Ed. 2d at 502, 122 S. Ct. at 589. Hancock observed suspicious activity at Knights' apartment and suspicious objects in plain view in the truck parked in the driveway. *Knights*, 534 U.S. at 115, 151 L. Ed. 2d at 502-03, 122 S. Ct. at 589. Hancock, aware of Knights' probation search condition, conducted a search of Knights' apartment without the knowledge or participation of any probation officers. *Knights*, 534 U.S. at 115, 151 L. Ed. 2d at 503, 122 S. Ct. at 589.

The Court framed the issue of the case to be whether the fourth amendment requires probation searches to have a "probationary" purpose rather than a law enforcement purpose even though the search condition itself did

not contain this requirement. *Knights*, 534 U.S. at 116, 151 L. Ed. 2d at 503, 122 S. Ct. at 590. In *Knights* the Court could not apply the "special needs" warrant exception of *Griffin* because this search was conducted for a law enforcement purpose. 4 W. LaFave, Search & Seizure § 10.10, at 206 (3d ed. Supp. 2003). Instead, the Court concluded that this particular search was reasonable when evaluated under the general fourth amendment " 'totality of the circumstances' " inquiry, with the search condition considered as a relevant factor. *Knights*, 534 U.S. at 118, 151 L. Ed. 2d at 505, 122 S. Ct. at 591, quoting *Robinette*, 519 U.S. at 39, 136 L. Ed. 2d at 354, 117 S. Ct. at 421. Under the totality-of-the-circumstances test, the court " 'assess[es], on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.' " *Knights*, 534 U.S. at 118-19, 151 L. Ed. 2d at 505, 122 S. Ct. at 591, quoting *Wyoming v. Houghton*, 526 U.S. 295, 300, 143 L. Ed. 2d 408, 414, 119 S. Ct. 1297, 1300 (1999).

The Court noted that Knights' probationary status had an impact on both sides of the balance. *Knights*, 534 U.S. at 119, 151 L. Ed. 2d at 505, 122 S. Ct. at 591. Because the liberty of probationers is legitimately limited through probation conditions, Knights had a "significantly diminished" expectation of privacy because he accepted a broad probation search condition. *Knights*, 534 U.S. at 119-20, 151 L. Ed. 2d at 505, 122 S. Ct. at 591-92. Because probationers' recidivism rates are higher than the general crime rate, the State is justified in focusing greater attention on probationers to protect the public and to promote rehabilitation of probationers. *Knights*, 534 U.S. at 120-21, 151 L. Ed. 2d at 506, 122 S. Ct. at 592. The Court held that "the balance of these considerations requires no more than reasonable suspicion to conduct a search of this probationer's house" so that a

warrant and probable cause are not required. *Knights*, 534 U.S. at 121, 151 L. Ed. 2d at 506, 122 S. Ct. at 592-93. The Court specifically held that the search was reasonable under the fourth amendment because the defendant conceded and the district court found that reasonable suspicion had supported the search. *Knights*, 534 U.S. at 122, 151 L. Ed. 2d at 507, 122 S. Ct. at 593.

Unlike in *Griffin*, nothing in the *Knights* opinion indicated that the probation search was subject to any regulations imposing a certain standard of suspicion. In fact, Knights' probation order permitted searches " 'with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer.' " *Knights*, 534 U.S. at 114, 151 L. Ed. 2d at 502, 122 S. Ct. at 589. Because there was no dispute that the officers had reasonable suspicion to search, the *Knights* opinion did not address whether the fourth amendment would have been satisfied had there been no individualized suspicion. *Knights*, 534 U.S. at 120 n.6, 151 L. Ed. 2d at 505 n.6, 122 S. Ct. at 592 n.6. The Court also did not reach the question of whether Knights' acceptance of the search condition was comparable to a complete waiver of fourth amendment rights as seen in consent cases. *Knights*, 534 U.S. at 118, 151 L. Ed. 2d at 504-05, 122 S. Ct. at 591.

B. Level of Individualized Suspicion Required

In light of these principles from *Griffin* and *Knights*, we apply the totality-of-the-circumstances test to the facts of this case to determine whether this search was reasonable at its inception and in its scope under the fourth amendment.

When evaluating the propriety of this search pursuant to Bircher's search condition, we balance the level of intrusion on personal privacy against the degree of need for the search to promote legitimate government interests. *Knights*, 534 U.S. at 118-19, 151 L. Ed. 2d at 505,

122 S. Ct. at 591. The State of Illinois certainly has a legitimate interest in promoting its probation system effectively. Like Wisconsin in *Griffin*, we recognize that our probation system serves the purposes of rehabilitating probationers while punishing them and protecting the public from crime. *People v. Meyer*, 176 Ill. 2d 372, 379 (1997); *Griffin*, 483 U.S. at 875, 97 L. Ed. 2d at 718, 107 S. Ct. at 3169. We agree that supervising the administration of the probation system is a "special need" of the state beyond the typical needs of law enforcement that justifies a greater governmental intrusion on privacy than would be constitutional as to an ordinary citizen. *Griffin*, 483 U.S. at 875, 97 L. Ed. 2d at 718, 107 S. Ct. at 3169; *Knights*, 534 U.S. at 120-21, 151 L. Ed. 2d at 506, 122 S. Ct. at 592.

In addition, imposing the traditional warrant and probable-cause requirements would unduly interfere with the effective administration of the Illinois probation system. See *Adams*, 149 Ill. 2d at 342, citing *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 619, 103 L. Ed. 2d 639, 661, 109 S. Ct. 1402, 1414 (1989). The probation officer, given his or her personal experience with the probationer, is better able to determine the level of supervision required than a neutral magistrate, and the process of obtaining a warrant would delay the officer's ability to respond to evidence of misconduct by the probationer. *Griffin*, 483 U.S. at 876, 97 L. Ed. 2d at 719, 107 S. Ct. at 3170. Similarly, requiring probable cause would facilitate the probationer's evasion of probation conditions through concealment of misconduct. *Griffin*, 483 U.S. at 878, 97 L. Ed. 2d at 720, 107 S. Ct. at 3171. We acknowledge that the importance of the Illinois probation system may justify a warrantless search of a probationer upon a lesser degree of suspicion than probable cause.

A probationer has a reduced expectation of privacy

compared to ordinary citizens because he or she is a criminal offender. *Adams*, 149 Ill. 2d at 348. Specifically, section 5—6—3 of the Code authorizes the imposition of reasonable probation conditions, which legitimately limit a probationer's liberty. *Griffin*, 483 U.S. at 874, 97 L. Ed. 2d at 718, 107 S. Ct. at 3169. The Court in *Knights* concluded that the defendant had a ''significantly diminished'' expectation of privacy because of his acceptance of the broad search condition of his probation order. *Knights*, 534 U.S. at 119-20, 151 L. Ed. 2d at 505, 122 S. Ct. at 591-92. However, Knights' probation condition was broader than Bircher's condition in that it permitted a search by *any* probation officer or law enforcement officer instead of a search "as directed by her Probation Officer" and in that it lacked the limitation found in Bircher's condition that the search be "to verify compliance with the conditions of this Probation Order." *Knights*, 534 U.S. at 114, 151 L. Ed. 2d at 502, 122 S. Ct. at 589. The Court recognized a correlation between the terms of the probation search condition and the degree of the probationer's expectation of privacy, which in turn influences the level of individualized suspicion required to justify a search:

"We do not decide whether the probation condition so diminished, or completely eliminated, Knights' reasonable expectation of privacy *** that a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment." *Knights*, 534 U.S. at 120 n.6, 151 L. Ed. 2d at 505 n.6, 122 S. Ct. at 592 n.6.

Because Bircher agreed to a more limited probation search condition than Knights, her expectation of privacy was not as diminished, and more individualized suspicion was required by the fourth amendment than would have been required for Knights. The Court in *Knights* did not reach the issue of the minimum level of individualized suspicion that would have satisfied the fourth amend-

ment. *Knights*, 534 U.S. at 120 n.6, 151 L. Ed. 2d at 505 n.6, 122 S. Ct. at 592 n.6. However, we conclude that this comparison lends support to the assertion that a probation search of Bircher upon no individualized suspicion would be constitutionally unreasonable.

In addition, although Bircher has a reduced expectation of privacy as a probationer subject to a search condition, the search of the motel room remains a significant intrusion on her privacy. *United States v. Crawford*, 323 F.3d 700, 715-16 (9th Cir. 2003); see also *Vernonia School District 47J v. Acton*, 515 U.S. 646, 657-60, 132 L. Ed. 2d 564, 577-79, 115 S. Ct. 2386, 2392-94 (1995) (analyzing defendant's expectation of privacy separately from degree of intrusiveness of the search when evaluating the reasonableness of a warrantless search under the fourth amendment). Again, whether or not room 14 was Bircher's actual residence at the time of the search, we regard fourth amendment protection for guests in motel rooms the same as for residents in their private homes. *Eichelberger*, 91 Ill. 2d at 364-65; *Stoner*, 376 U.S. at 490, 11 L. Ed. 2d at 861, 84 S. Ct. at 893. The importance of fourth amendment protection in one's home has been stressed by the Court,

> "The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: 'The right of the people to be secure in their ... houses ... shall not be violated.' " *Payton*, 445 U.S. at 589, 63 L. Ed. 2d at 653, 100 S. Ct. at 1381-82, quoting U.S. Const., amend. IV.

See *White*, 117 Ill. 2d at 210. The primacy of fourth amendment protection against intrusions into a person's home further encourages us to require some level of individualized suspicion prior to a probation search of a probationer's residence.

After balancing these privacy and government inter-

est considerations under the circumstances of this case, we find that the officers were constitutionally authorized to search the motel room only if they had reasonable suspicion of a probation violation by Bircher. Even though neither Bircher's probation order nor Illinois regulations imposed a reasonable suspicion requirement, the search can be valid under the fourth amendment if the officers actually had reasonable suspicion of a probation violation supporting the probation search. See, *e.g.*, *United States v. Vincent*, 167 F.3d 428, 431 (8th Cir. 1999) (probation search is permissible, even if probation condition is overbroad, if the search authority is "narrowly and properly exercised").

Even though the Supreme Court has not yet directly addressed this issue, we note that the clear majority of federal courts of appeals also require reasonable suspicion to support a probation search. *United States v. Giannetta*, 909 F.2d 571, 576 (1st Cir. 1990); *United States v. Bradley*, 571 F.2d 787, 790 n.4 (4th Cir. 1978); *United States v. Scott*, 678 F.2d 32, 35 (5th Cir. 1982); *United States v. Payne*, 181 F.3d 781, 787 (6th Cir. 1999); *Vincent*, 167 F.3d at 431; *Crawford*, 323 F.3d at 714. The only case that has found that no individualized suspicion was required for a probation search was decided prior to the *Griffin* and *Knights* cases. *Owens v. Kelley*, 681 F.2d 1362, 1368 (11th Cir. 1982).

In addition, none of the cases in which the Court has permitted warrantless searches without individualized suspicion involved a search of the home. *Crawford*, 323 F.3d at 712; see, *e.g.*, *Acton*, 515 U.S. at 650, 664-65, 132 L. Ed. 2d at 572, 582, 115 S. Ct. at 2389, 2396 (permitting warrantless, suspicionless drug testing of interscholastic athletes); *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 659-60, 677, 103 L. Ed. 2d 685, 698, 709, 109 S. Ct. 1384, 1387, 1396-97 (1989) (allowing warrantless, suspicionless drug testing of U.S. Customs

employees who have contact with illegal drugs, firearms or classified materials); *Skinner*, 489 U.S. at 606, 624, 103 L. Ed. 2d at 653, 664, 109 S. Ct. at 1407, 1417 (upholding warrantless, suspicionless mandated drug and alcohol testing of railroad employees involved in certain train accidents).

The Court's conclusions in these cases were based, in part, on the fact that the urinalysis tests were conducted in such a manner that the invasion of privacy was "not significant." *Acton*, 515 U.S. at 660, 132 L. Ed. 2d at 579, 115 S. Ct. at 2394; see also *Von Raab*, 489 U.S. at 672 n.2, 103 L. Ed. 2d at 706 n.2, 109 S. Ct. at 1394 n.2; *Skinner*, 489 U.S. at 624-25, 103 L. Ed. 2d at 664-65, 109 S. Ct. at 1417. The Court explained,

> "Exceptions to the requirement of individualized suspicion are generally appropriate only where the privacy interests implicated by a search are minimal and where 'other safeguards' are available 'to assure that the individual's reasonable expectation of privacy is not "subject to the discretion of the official in the field." ' *Delaware v. Prouse*, 440 U.S. 648, 654-55 (1979) (citation omitted)." *New Jersey v. T.L.O.*, 469 U.S. 325, 342 n.8, 83 L. Ed. 2d 720, 735 n.8, 105 S. Ct. 733, 743 n.8 (1985).

In contrast, a search of a person's home, whether consisting of one room or an entire house, cannot be characterized as a minor invasion of privacy. *Chimel v. California*, 395 U.S. 752, 766 & n.12, 23 L. Ed. 2d 685, 695-96 & n.12, 89 S. Ct. 2034, 2041-42 & n.12 (1969). The clear trend in the federal courts of appeals and the rarity of the Court's allowance of warrantless, suspicionless searches provide additional support for our conclusion that a probation search of the residence of a probationer subject to a search condition like Bircher's complies with the fourth amendment reasonableness requirement only if the searching officers had reasonable suspicion of a probation violation.

C. Level of Individualized Suspicion Present

Next, we evaluate whether the officers had reason-

able suspicion that Bircher had violated her probation order so that the search was justified at its inception under the fourth amendment. Reasonable suspicion exists when "articulable facts which, taken together with the rational inferences from those facts, *** warrant a reasonably prudent officer" to investigate further. *Maryland v. Buie*, 494 U.S. 325, 334, 108 L. Ed. 2d 276, 286, 110 S. Ct. 1093, 1098 (1990); see *People v. Scott*, 148 Ill. 2d 479, 503 (1992). Reasonable suspicion is a less stringent standard than probable cause (*Alabama v. White*, 496 U.S. 325, 330, 110 L. Ed. 2d 301, 309, 110 S. Ct. 2412, 2416 (1990)), but it requires more than a mere "hunch" on the part of the officer (*Scott*, 148 Ill. 2d at 503). An officer's good-faith, subjective belief that he or she has sufficient suspicion to justify the intrusion alone is inadequate to satisfy the objective reasonable suspicion standard. *Terry*, 392 U.S. at 22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880.

In the present case, the officers decided to go to the motel on July 14 because Bircher's relatives told Officer Goodwin that Bircher was no longer living at the Charleston apartment and that she was staying with defendant at a specific Mattoon motel. If this constituted a change in residence, Bircher had violated the probation condition requiring her to give her probation officer notice of such a change. The officers were told at the motel's front desk that Bircher was staying in room 14. Upon answering the door to room 14, defendant admitted that Bircher was staying there.

Officer Kelly identified an additional purpose to going to the motel: to check for the presence of weapons and/or drugs because she was staying with defendant. However, Kelly admitted at the motion hearing that he "had no specific information from anyone that Mr. Lampitok was doing anything illegal." Instead, any notion that defendant could bring Bircher in contact with weapons or

drugs appears to be based on a prior encounter. Kelly and defendant were at a scene where drugs and a syringe were present and arrests were made. Defendant was not arrested during this incident, but Kelly speculated that defendant appeared to be "under the influence of something." On this basis, defendant's "reputation precede[d] him." No testimony at the hearing otherwise potentially linked defendant or Bircher with drugs or weapons, and Bircher's conviction leading to her sentence of probation was for felony forgery rather than for a drug- or weapon-related offense. The State aptly summarizes this evidence as: (1) Bircher never informed her probation officer that she left the Charleston apartment, and (2) she was living with a suspected drug user.

In *United States v. Payne*, the Sixth Circuit Court of Appeals concluded that officers lacked reasonable suspicion where they conducted a parole[1] search given knowledge of defendant's two prior drug offense convictions and an anonymous, general tip, received six weeks earlier, that defendant possessed methamphetamines. *Payne*, 181 F.3d at 789-91. Specifically, the court concluded that the stale tip added little, and criminal history alone did not constitute reasonable suspicion. *Payne*, 181 F.3d at 790-91.

In this case, the information the officers possessed that Bircher might be in the presence of drugs or weapons was even less substantial than knowledge of criminal history. The record indicates that one officer had a subjective perception that defendant was a drug user; there is no indication in the record that defendant

---

[1] We consider fourth amendment cases about parolees to be fully applicable to the present case because there is no constitutionally significant difference between the status of parolees and probationers for fourth amendment purposes. *Crawford*, 323 F.3d at 708 n.15; see also *Gagnon v. Scarpelli*, 411 U.S. 778, 782 & n.3, 36 L. Ed. 2d 656, 661 & n.3, 93 S. Ct. 1756, 1759 & n.3 (1973).

was ever arrested for or convicted of a drug-related offense. Absolutely no evidence links Bircher directly with drugs or weapons. We conclude that the officers did not have reasonable suspicion that Bircher violated her probation order by possessing weapons or drugs merely because she cohabited with defendant, a suspected drug user. Individualized suspicion must be based at least in part on facts indicating possible present criminal activity. See *Illinois v. Gates*, 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332 (1983). The additional fact that defendant delayed opening the motel room door for an unspecified time period is insufficient to show that the officers had reasonable suspicion that Bircher possessed weapons or drugs. Thus, a search by the officers of room 14 for the sole purpose of discovering drugs and weapons was unreasonable, in violation of the fourth amendment under the facts of this case.

A closer question is presented by whether officers had reasonable suspicion that Bircher was in violation of her probation order by changing residences without notifying her probation officer in advance. In evaluating whether reasonable suspicion exists, the court should consider the quality and content of information known to officers as well as the reliability of the source of the information. See *White*, 496 U.S. at 330, 110 L. Ed. 2d at 309, 110 S. Ct. at 2416; *People v. Ertl*, 292 Ill. App. 3d 863, 872-73 (1997). Certain factors can support a finding of reasonable suspicion, including corroboration of the tip through observation by officers (*White*, 496 U.S. at 331, 110 L. Ed. 2d at 309, 110 S. Ct. at 2416-17), inclusion of details in the tip (*United States v. Tucker*, 305 F.3d 1193, 1201 (10th Cir. 2002)), explanation of the basis of knowledge of the tip by the informant (*Tucker*, 305 F.3d at 1201), and little passage of time between receiving tip and acting upon it by officers (see *Payne*, 181 F.3d at 790). Other factors can belie such a finding, including

anonymity of the tipster (*People v. Carlson*, 313 Ill. App. 3d 497, 449-50 (2000); see also *Florida v. J.L.*, 529 U.S. 266, 274, 146 L. Ed. 2d 254, 262, 120 S. Ct. 1375, 1380 (2000)), and absence of track record of supplying reliable information by known tipster (*People v. Lockhart*, 311 Ill. App. 3d 358, 362 (2000)). However, deficiency or uncertainty in the reliability of the informant can be compensated for by a strong level of detail and corroboration of the content of the tip, and vice versa. *White*, 496 U.S. at 330, 110 L. Ed. 2d at 309, 110 S. Ct. at 2416; see *Lockhart*, 311 Ill. App. 3d at 362.

The officers received information from three sources that Bircher was staying at the motel rather than her listed Charleston apartment. First, Bircher's relatives, her roommates, told Goodwin that she was no longer living there and instead was staying with defendant at the U.S. Grant Motel in Mattoon. Though not anonymous, they had no track record of providing reliable information. In addition, Craig had an incentive to lie because he was violating his lease by allowing Bircher and defendant to reside there. However, as relatives and roommates, they had explained the source of their knowledge. In addition, the relatives gave the specific name of the motel at which Bircher was staying, which was corroborated before the search took place by the motel clerk and defendant himself, neither of whom had an incentive to answer as they did. The officers certainly had a reasonable suspicion prior to the search that Bircher was *staying* at the motel.

However, at issue is whether Bircher had changed her *residence* from the Charleston apartment to room 14 because she would have been in violation of her probation order only if she had changed residences without giving prior notice to her probation officer. Thus, the officers needed to have reasonable suspicion that room 14 had become Bircher's residence.

Again, two relatives of Bircher's had told one officer, Goodwin, that she no longer lived there and that she was staying with defendant at the U.S. Grant Motel in Mattoon. Kelly admitted at the suppression hearing that he did not have independent knowledge about the reliability of these relatives. The record does not indicate whether Goodwin knew that these relatives were also Bircher's roommates or that under his lease Craig had reason to convey an impression that he had no roommates given the imminent inspection by his landlord. We conclude that the officers reasonably decided to investigate further whether Bircher had in fact changed her residence because the statement that she had moved came from Bircher's relatives present at the Charleston apartment. Subsequently, both the motel clerk and defendant himself corroborated that Bircher had been staying at the motel as claimed by the relatives. Thus, we find that the officers had reasonable suspicion that Bircher had changed residences without providing prior notification, in violation of her probation order. See *White*, 496 U.S. at 331, 110 L. Ed. 2d at 309, 110 S. Ct. at 2416-17; *Tucker*, 305 F.3d at 1201. At the inception of the search, the officers were constitutionally justified in searching room 14 to verify whether Bircher had in fact changed residences in violation of her probation order but not to look for weapons and drugs. See *Terry*, 392 U.S. at 19-20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879.

D. Scope of the Search

Our fourth amendment inquiry does not end here, however. Under *Terry*, we must determine whether the search "was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 19-20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879. We already have found that the officers were not entitled to search for weapons or drugs under the facts of this case; they were entitled only to verify that Bircher was residing in room 14.

We find that the officers were only authorized to check whether Bircher was in fact in room 14 despite defendant's statement to the contrary. Searching for Bircher herself was the constitutional limit to a probation search premised on reasonable suspicion that Bircher had changed residences without notifying her probation officer. The record, however, discloses that none of the evidence used to charge defendant was found in plain view. Clearly the search between the mattress and box springs of the bed, for example, was conducted to check for weapons and drugs rather than to confirm Bircher's residence in the room. Thus, we find that the circuit court properly suppressed all the evidence found in room 14 because it was discovered beyond the constitutionally reasonable scope of the probation search.

### E. Waiver of Fourth Amendment Protection

We address a final fourth amendment issue raised by the State. The State asserts that Bircher's acceptance of the conditions of her probation constituted prospective consent that waived fourth amendment protection. This issue was expressly left open by the Court in *Knights*. *Knights*, 534 U.S. at 118, 151 L. Ed. 2d at 504-05, 122 S. Ct. at 591.

None of the probation conditions explicitly express a waiver of fourth amendment rights. Bircher's probation order stated, "That Defendant shall submit to a search *** as directed by her Probation Officer." Two members of the appellate panel interpreted this language as requiring Bircher's presence during a probation search, while one of the two justices concluded that the condition could also be satisfied if Bircher had prior notice of the search.

Each of the 20 conditions of Bircher's probation, including the search condition, begin with the phrase "That the Defendant" shall do or refrain from doing certain things. The inclusion of this phrase is significant because it shows that compliance by Bircher is dependent

on her conduct. In other words, the search condition did not directly empower her probation officer to conduct searches to verify compliance; it required action by Bircher, that she "shall submit" to a search.

The term "shall" is often the focus of scrutiny during statutory interpretation. See, *e.g.*, *People v. Richardson*, 104 Ill. 2d 8, 15 (1984). We note the primary definition of "shall" is, "[h]as a duty to; more broadly, is required to." Black's Law Dictionary 1379 (7th ed. 1999). In other words, by accepting the probation order, Bircher accepted a duty to submit to a probation search when directed to do so by her probation officer. Creating such a duty implies a requirement of further action by Bircher rather than a prospective consent toward possible future, unspecified searches.

We are informed about the meaning of "submit" by examining the usage of this term elsewhere in the probation order. See *McMahan v. Industrial Comm'n*, 183 Ill. 2d 499, 513 (1998), citing *People v. Talbot*, 322 Ill. 416, 422 (1926). The term "submit" appears only in one other condition, "20. That the Defendant shall submit herself to and successfully complete Mental Health evaluation and treatment as deemed reasonably necessary by her Probation Officer." The purpose of such a condition was not merely to obtain prospective consent to attend future treatment. Instead, this condition clearly required future action by Bircher, specifically that she actually attend mental-health appointments when told to do so by her probation officer or risk revocation of her probation. Thus, it is reasonable to conclude that "submit" was used similarly in the search condition, that upon the request of the probation officer she would either have to agree to permit the search or face possible probation revocation.

These probation conditions were mandatory limits upon the liberty of Bircher. See *Griffin*, 483 U.S. at 874,

97 L. Ed. 2d at 718, 107 S. Ct. at 3169, quoting *Morrissey*, 408 U.S. at 480, 33 L. Ed. 2d at 494, 92 S. Ct. at 2600. However, their mandatory nature did not remove the element of choice from Bircher's life. During the period of her probation, Bircher repeatedly was faced with the decision of whether to comply with these conditions or whether to face revocation of her probation and possible incarceration, just as all citizens are subject to the requirements and proscriptions of civil and criminal laws and regulations.

We find that the plain language of this probation search condition affirmatively required Bircher's probation officer to ask her to consent—or submit—to a particular search prior to conducting it; agreeing to the probation order did not constitute a prospective consent to all probation searches that waived fourth amendment protection. See, *e.g.*, *State v. Hindman*, 125 Or. App. 434, 439, 866 P.2d 481, 483 (1993); *contra State v. Martinez*, 811 P.2d 205, 209 (Utah App. 1991); see also 4 W. LaFave, Search & Seizure, § 10.10(b), at 764-66 (3d ed. 1996).

## CONCLUSION

The circuit court properly suppressed the evidence found in room 14 because the search that uncovered it was constitutionally unreasonable in its scope.

The judgment of the appellate court is affirmed.

*Affirmed.*